[Cite as *Cleveland v. Toth*, 2023-Ohio-315.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111934 |
| v. | : | |
| CATHERINE D. TOTH, | : | |
| Defendant-Appellant. | : | |

**JOURNAL ENTRY AND OPINION**

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 2, 2023

Criminal Appeal from the Cleveland Municipal Court
Case No. 2022 CRB 005864

*Appearances:*

Mark Griffin, Cleveland Director of Law, Aqueelah A. Jordan, Chief Prosecuting Attorney, and Aric Kinast, Assistant Prosecuting Attorney, *for appellee.*

Catherine D. Toth, *pro se.*

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant Catherine D. Toth brings the instant appeal challenging her disorderly conduct conviction as adjudicated by the Cleveland Municipal Court. After a thorough review of the applicable law and facts, we affirm.

## I. Factual and Procedural History

{¶ 2} This case arose from a specific incident that occurred on July 8, 2022, in Cleveland's Edgewater neighborhood, but appears to stem from a longstanding dispute between neighbors.

{¶ 3} In the underlying incident, Toth was charged with disorderly conduct, a minor misdemeanor in violation of Cleveland Codified Ordinances 605.03(a). Pertinently, this ordinance reads:

> (a)  No person shall recklessly cause inconvenience, annoyance or alarm to another, by doing any of the following:
>
> (1)  Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;
>
> (2) Making unreasonable noise or offensively coarse utterance, gesture or display, or communicating unwarranted and grossly abusive language to any person, which by its very utterance or usage inflicts injury or tends to incite an immediate breach of the peace;
>
> (3) Insulting, taunting, or challenging another under circumstances in which such conduct is likely to provoke a violent response;
>
> (4)  Hindering or preventing the movement of persons on a public street, road, highway or right-of- way, or to, from, within or upon public or private property, so as to interfere with the rights of others, and by any act which serves no lawful and reasonable purpose of the offender;
>
> (5)  Creating a condition which is physically offensive to persons or which presents a risk of physical harm to persons or property, by any act which serves no lawful and reasonable purpose of the offender.

{¶ 4} Toth entered a not guilty plea at arraignment.  The case was set for pretrial on December 6, 2022.

{¶ 5} At pretrial, Toth entered a no-contest plea.  The trial court received statements from Toth and the city.  The original citation contained the following

description of the offense: "Toth did cause annoyance and alarm by standing on a public sidewalk calling a neighbor a (Ni...). We told her to stop but she continued to yell in the street and sidewalk [sic] caught on the WCS." The city prosecutor described the event as follows:

> [THE CITY]: On July 8th of 2022 in the city of Cleveland in the afternoon, the officers did observe the defendant cause annoyance, alarm to public, uh, when she was on a public sidewalk using language that would be — cause disturbance. They did warn her to stop and she continued to use it, so it [sic] could've charged first degree aggravated disorderly conduct, because if you persist after warnings, uh, then it could be a first degree. But they did not charge that. They just charged the minor misdemeanor for using the language, which, um, for the record, uh, was inflammatory. * * *

(Tr. 6-7.)

{¶ 6} Toth acknowledged that she used inflammatory language but maintained that she was repeating what her neighbors were shouting at her. She noted that she is an enthusiastic supporter of former President Obama, and her neighbors used "the N word" to refer to him, that "all the people in this neighborhood are white" and that "[t]here's no African-Americans there." (Tr. 10.) Toth explained that she placed the initial call to the police due to the actions of her neighbors. She stated that she repeatedly has trouble with her neighbors, and that the neighbors frequently call her and her wife names and use "anti LGBTQ language." Toth further explained that "the N word" repulses her, but she was using it so that the responding officers could "understand the nature of the communications that [she] gets from across the fence from [her] neighbor." (Tr. 8-9.)

**{¶ 7}** After Toth gave this explanation, the trial court stated that it was going to find Toth not guilty. The prosecutor immediately pointed out that Toth pled no-contest and the ticket says that she did "cause annoyance and alarm" by standing outside and using inflammatory language against a neighbor. Toth's counsel reiterated that Toth was merely repeating the language that was directed at her. At this point, the trial court asked to hear from the officer who wrote the citation.

**{¶ 8}** The police officer who signed the ticket provided the following information at the pretrial:

[THE CITY]: Why did you give her this ticket?

* * *

THE POLICE OFFICER: * * * When we arrived to the original incident, it was neighbor troubles. Um, after getting the report, um, from both sides of the story, uh, we waited across the street for our sergeant. Ms. [Toth] did come out onto the sidewalk and in the street while the neighbors were outside. And we did have multiple joggers around, and did continue to scream and yell and then say —

THE COURT: Who did?

THE POLICE OFFICER: Ms. Toth did, and did say, uh, the — inappropriate word multiple times.

* * *

THE COURT: The ticket says "that we told her to stop." And did you?

THE POLICE OFFICER: Yes, ma'am.

THE COURT: Personally you did?

THE POLICE OFFICER: Yes, ma'am.

THE COURT: And she continued?

THE POLICE OFFICER: Yes, ma'am.

(Tr. 11-12.)

{¶ 9} Following this exchange, the trial court found Toth guilty. Toth was fined $75 and ordered to pay court costs. The fine was suspended.

{¶ 10} Toth appealed, assigning the following four errors for our review. The errors are verbatim as provided by Toth.

> I. Trial Counsel and Court deprived the Appellant of her right to effective assistance of counsel under the Sixth Amendment to The U.S. Constitution and under the Ohio Constitution, Article I, Section 10.

> II. Trial Court violated Appellant's right to not be subject for the same offence to be twice put in jeopardy of life or limb under the Fifth Amendment to the US Constitution and under the Ohio Constitution.

> III. The trial Court's failure to obtain a waiver of the right to a jury trial, failure to explain the implications of a "no contest" plea, failure to control the courtroom dynamics, and which were highly prejudicial to the Appellant are grounds for reversal under the Due Process clause of the Fourteenth Amendment to The U.S. Constitution and under the Ohio Constitution. The trial deprived the Appellant of her Constitutional rights by allowing the Prosecutor to testify to facts to allege facts he was not witness to supporting a jail sentence and constituting an "otherwise infamous crime" under the Ohio Constitution but charging a minor misdemeanor constituting prosecutorial corruption and a gross violation of justice.

> IV. The Court abused its discretion and evidenced extreme bias in favor of the government against a protected-class citizen (sexual orientation, and gender) violating the Appellant's civil rights under the Due Process clause of the Fourteenth Amendment to The U.S. Constitution and under the Ohio Constitution.

{¶ 11} After Toth filed her appeal, the city filed a motion to dismiss asking this court to dismiss this matter as moot since Toth fulfilled all obligations stemming from this conviction. We denied this motion to dismiss, noting that Toth argued that this conviction could deprive her of future employment, and accepted the

appeal for review.[1]  Toth is a civil-rights attorney and alleges that this incident has "effectively taken [her] ability to work in her field away."

## II. Law and Analysis

{¶ 12} Before analyzing Toth's assignments of error, we address Toth's brief. We first note that App.R. 16(A)(6) requires appellant's brief to include "[a] statement of facts relevant to the assignments of error presented for review, with appropriate references to the record in accordance with division (D) of this rule." Additionally, App.R. 16(A)(7) provides that appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the * * * parts of the record on which appellant relies." Appellant's brief alleges multiple facts that are not contained in the record.

{¶ 13} Particularly, Toth's brief notes that the bailiff threatened her if she did not "shut up" and that "the Prosecutor and Witness were testifying 'some thing' would happen next time she did not comply."  Toth also alleges that she was "threatened repeatedly to not talk by her own unprepared counsel."  The transcript does not reflect any of these allegations and only substantiates one instance where the bailiff instructed Toth to face the judge.

---

[1] Our denial of the city's motion to dismiss was based on *State v. Golston*, 71 Ohio St.3d 224, 226, 643 N.E.2d 109 (1994), reiterating that appeals from defendants convicted of misdemeanors are moot if the defendant voluntarily satisfies the judgment.  The *Golston* Court articulated that the mootness of such appeal may be overcome if the defendant offers evidence "from which an inference can be drawn that he or she will suffer some collateral legal disability or loss of civil rights stemming from that conviction."

{¶ 14} Toth's brief also contains numerous facts detailing the history of this dispute between neighbors; previous and pending cases relevant to the ongoing conflict with her neighbors; and previous encounters with the Cleveland Police Department. Because these facts, among others that Toth alleges, are not in the record before us, we are unable to consider them in our review. Pursuant to App.R. 16, we will only address facts appropriately preserved in the record before us.

### A. Procedural Due Process

{¶ 15} For ease of discussion, we address Toth's third assignment of error first. In her third assignment of error, Toth argues that the trial court failed to explain the implications of a no-contest plea. Toth also argues that the trial court failed to obtain a waiver of her right to a jury trial and failed to control the intimidation of the court bailiff.

{¶ 16} "'A trial court's obligations in accepting a plea depend upon the level of offense to which the defendant is pleading.'" *Parma v. Benedict*, 8th Dist. Cuyahoga No. 98947, 2013-Ohio-1990, ¶ 7, quoting *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 6. Crim.R. 11 distinguishes misdemeanor offenses as either "serious" or "petty." Crim.R. 11(E), (F). Crim.R. 2(D) defines a petty offense as a misdemeanor that is not a serious offense. Under Crim.R. 2(C), a serious offense is a felony or misdemeanor where the penalty is confinement that exceeds six months. Since disorderly conduct carries only a maximum fine of $150 and does not allow any confinement as punishment, it is a petty offense. Cleveland Codified Ordinances 601.99(a); *E. Cleveland v. Brown*, 8th Dist. Cuyahoga No.

97878, 2012-Ohio-4722, ¶ 7. Therefore, Crim.R. 11(E), governing petty misdemeanors, directs the extent of the colloquy necessary for a court to accept a no-contest plea.

{¶ 17} "Before accepting a guilty or no contest plea in a petty misdemeanor case, the trial court must make the determinations and findings required by Crim.R. 11(E), and notify the defendant of the effects of the plea as set forth in Crim.R. 11(B)(1) through (3)." *Cleveland v. Bowman*, 8th Dist. Cuyahoga No. 103287, 2016-Ohio-1545, ¶ 6, citing *Jones* at ¶ 1-2 of the syllabus. Crim.R. 11(E) instructs that "the court may refuse to accept a plea of guilty or no contest, and shall not accept such plea without first informing the defendant of the effect of the pleas of guilty, no contest, and not guilty." Crim.R. 11(B)(2) is pertinent to this case and instructs that "a plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." We further note that "[i]nforming a defendant of the effect of his or her plea is a nonconstitutional right, and therefore, is subject to review for substantial compliance rather than strict compliance." *State v. Anglen*, 8th Dist. Cuyahoga No. 102022, 2015-Ohio-4070, ¶ 10, citing *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 11-12.

{¶ 18} Relating to its obligations under Crim.R. 11, the trial court pertinently advised Toth of the following:

THE COURT: A no contest — I'm just gonna put it on the record. A no contest plea is not an admission of guilt, but it is an admission of the truth of the facts stated on the ticket. If you plea, you can make a statement of the facts. The prosecutor, witness will make a statement of the facts and I'll be set.

(Tr. 3.)

{¶ 19} After this instruction, a sidebar commenced and the proceedings were paused. When the proceedings resumed, Toth's counsel informed the court that Toth was entering a no-contest plea. The court reiterated

THE COURT: Okay. I just will repeat for the record before accepting the no contest — you're shaking your head. Um, so you need to consult with your client because it needs to be a voluntary plea. If you need a moment, I'll give you a moment.

[TOTH'S COUNSEL]: We're fine, your Honor. We're ready.

THE COURT: Okay. A no contest plea is not an admission of guilt, but it is an admission of the truth of the facts stated on the ticket. You'll have opportunity to present the facts. The prosecutor will go first. It cannot be used against you in any further proceedings. Did you hear that?

[TOTH]: Yes, ma'am, I did. I'm a little confused.

[TOTH'S COUNSEL]: I'd rather you repeat it once more, your Honor, because that would be important.

THE COURT: A no contest plea regardless of the outcome or my decision, it cannot be used against you in any further proceeding. You understand?

[TOTH]: I do, but it can be used against me in an employment application, correct?

THE COURT: Oh, I cannot give you that legal advice. You have your attorney. He has to give you legal advice on that respect.

[TOTH]: All right. Okay. Thank you, your Honor.

THE COURT: Okay. What is your plea, Mrs. Toth?

[TOTH]: No contest.

(Tr. 5-6.)

{¶ 20} The trial court complied with its obligations under Crim.R. 11 multiple times. Toth herself entered the no-contest plea after consulting her attorney and being given an opportunity to consult her attorney yet again after the trial court observed her trepidation and engaged in a conversation with her to ensure that she was not confused. We therefore find that the trial court did not err in instructing Toth pursuant to Crim.R. 11.

{¶ 21} We also note that Toth suggests that the trial court erred in receiving evidence and finding her guilty after she pled no-contest. A no-contest plea "shall constitute an admission of the truth of the facts alleged in the complaint and that the judge or magistrate may make a finding of guilty or not guilty from the explanation of circumstances of the offense." R.C. 2937.07. This code section further explains that if the offense is a minor misdemeanor, the judge is "not required to call for an explanation of the circumstances of the offense." R.C. 2937.07. Nonetheless, the explanation of the circumstances by the state "must contain sufficient information to support all of the essential elements of the offense charged." *State v. Taylor*, 3d Dist. Hardin No. 6-95-13, 1996 Ohio App. LEXIS 995, 8 (Mar. 12, 1996), citing *Cuyahoga Falls v. Bowers*, 9 Ohio St.3d 148, 151, 459 N.E.2d 532 (1984); *State v. Gilbo*, 96 Ohio App.3d 332, 337, 645 N.E.2d 69 (2d

Dist.1994). We further note that by entering a no-contest plea, a defendant waives her right to present additional affirmative factual allegations to prove that she was not guilty and any statements received from the defendant are considered to mitigate the penalty. *Gilbo* at 337, citing *State v. Herman*, 31 Ohio App.2d 134, 139, 286 N.E.2d 296 (6th Dist.1971).

{¶ 22} The city reiterated the contents of the ticket and the police officer who wrote the ticket confirmed that Toth was causing disturbance by screaming obscenities on the public sidewalk. The police officer even noted that multiple joggers were present at the time of the utterances. Toth did not deny that this scenario occurred, but instead clarified the purpose behind the disturbance. Toth notes that she was not screaming the offensive language as insults, but to repeat the language that her neighbors constantly use against her. We are cognizant of this argument and have no reason to disbelieve Toth's explanation, but the actual conduct, regardless of the purpose, still evidences a violation of the municipal ordinance with which she was charged. The explanation offered by the city and the police officer who signed the ticket indicate that Toth's actions, despite their purpose, amounted to a violation of the ordinance. Accordingly, the trial court was well-within its right to allow the city to present an explanation of the circumstances. Toth's statements that the conduct was not aimed at anyone allowed the trial court to consider these circumstances in determining Toth's penalty.

{¶ 23} Regarding Toth's claim that she was not advised of her right to a jury trial, this court has previously held that entering a plea of guilty or no-contest

constitutes a waiver of the right to a jury trial and that a trial court does not err when accepting a plea without a waiver of a trial by jury. *Cleveland Hts. v. Brisbane*, 2016-Ohio-4564, 70 N.E.3d 52, ¶ 45 (8th Dist.), citing *State v. Beckford*, 4th Dist. Washington Nos. 95CA5 and 96CA2, 1996 Ohio App. LEXIS 5837, 11 (Dec. 23, 1996).

{¶ 24} Finally, Toth suggests that her procedural due process rights were violated because the trial court did not control the bailiff's intimidation. The transcript before us reflects one instance where the bailiff requested that Toth face the judge. Furthermore, Toth does not point to any case law upon which we can rely to suggest that this violated her procedural due process rights.

{¶ 25} Finding no error in the trial court's Crim.R. 11 advisements and procedure, we overrule Toth's third assignment of error.

### B. Ineffective Assistance of Counsel

{¶ 26} Toth's first assignment of error argues that she was deprived of her right to effective assistance of counsel. Toth alleges that her trial counsel was ineffective for (1) failing to request or review discovery; (2) failing to discuss the plea and the impact of a no contest plea; (3) engaging in a sidebar with the prosecution and court without Toth and failing to discuss the sidebar with Toth; and (4) failing to prepare for the hearing.

{¶ 27} To establish a claim of ineffective assistance of counsel, Toth must demonstrate that her trial counsel's representation was deficient, and that the deficient performance was prejudicial. *In re K.*, 8th Dist. Cuyahoga No. 83410,

2004-Ohio-4629, ¶ 17, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Weaver*, Slip Opinion No. 2022-Ohio-4371, ¶ 68. All licensed attorneys are presumed competent and the challenged actions are presumed to reflect sound trial strategy within the range of reasonable professional assistance. *In re K.* at *id.*, citing *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). An appellant demonstrates prejudice by showing that but for trial counsel's actions, the result of the proceeding would have been different. *In re K.* at *id.*, citing *Strickland* at 694.

{¶ 28} Reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Smith*, 8th Dist. Cuyahoga No. 85616, 2005-Ohio-4702, ¶ 13, citing *Strickland* at 689. Finally, "in reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner." (Emphasis deleted.) *State v. Jennings*, 8th Dist. Cuyahoga No. 91231, 2009-Ohio-2579, ¶ 27, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985); *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301, 209 N.E.2d 164 (1965).

{¶ 29} Toth first argues that her counsel was ineffective for failing to request discovery, particularly the body camera footage of the officers on scene that she states will show the "perjury of the police officer." We first note that "the decision whether or not to submit a request for discovery is presumed to be a trial tactic which

does not constitute ineffective assistance of counsel." *State v. Northern*, 8th Dist. Cuyahoga No. 35849, 2001 Ohio App. LEXIS 6010, 9 (Dec. 26, 2001), *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189 (1980). Most significantly, however, Toth fails to demonstrate how her trial counsel's failure to request the body camera footage prejudiced her. Toth does not explain *what* the body camera footage will show that contradicts the facts supporting her conviction. We also note that Toth voluntarily entered a no-contest plea, which, as already discussed, constitutes an admission that the factual allegations on the ticket are true and pursuant to *Gilbo*, obviates the need for additional evidence to disprove guilt.

{¶ 30} Toth also argues that her trial counsel was ineffective for failing to discuss the no-contest plea and its implications with her. We find that the record does not support this contention. As already explained, the trial court cautiously ensured that Toth's plea was entered voluntarily after being given several opportunities to consult with counsel.

{¶ 31} Toth also does not point to any caselaw upon which we can rely that trial counsel was ineffective for engaging in a sidebar without their client, nor has she demonstrated how this action was prejudicial to her.

{¶ 32} Finally, Toth argues that it is clear from the record that trial counsel forgot about the hearing and did not prepare for it, and that this constitutes ineffective assistance of counsel. Toth cites the following portion of the transcript to demonstrate that her trial counsel was unprepared:

[TOTH'S TRIAL COUNSEL]: Uh, my understanding, your Honor. Um, just so I can apologize, from the third floor it [sic] came here for today. It's a first time we've been here, but my — my client, uh, is not interested in entering a plea, uh, to the charge. So we were — are ready to proceed with the trial.

(Tr. 3.)

{¶ 33} We are not persuaded that this interaction demonstrates that Toth's trial counsel was unprepared. This statement occurred at the very beginning of the hearing and the record reflects that trial counsel conferred with Toth after this statement, and Toth ended up entering her own plea verbally after these discussions. Toth's argument that trial counsel was unprepared is merely speculative. Speculation "is insufficient to demonstrate the required prejudice needed to succeed on a claim for ineffective assistance of counsel." *State v. Moon*, 8th Dist. Cuyahoga No. 93673, 2010-Ohio-4483, ¶ 9, citing *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864; *State v. Imani*, 5th Dist. Tuscarawas No. 2008 AP 06 0043, 2009-Ohio-5717; *State v. Grahek*, 8th Dist. Cuyahoga No. 81443, 2003-Ohio-2650. Toth's first assignment of error is accordingly overruled.

### C. Double Jeopardy

{¶ 34} In her second assignment of error, Toth argues that her constitutional protections against double jeopardy were violated when the trial court initially found her not guilty, and then found her guilty during the same proceeding after the city pointed out that Toth entered a no-contest plea. The city reminded the trial court that because Toth entered a no-contest plea, she admitted the facts stated on the ticket.

{¶ 35} In support of this assignment of error, Toth cites the United States Supreme Court cases *N. Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which held that double jeopardy protections protect against "a second prosecution for the same offense after conviction" and "multiple punishments for the same offense" and the test set forth in *Blockburger v. United States*, 284 U.S. 299, 302, 52 S.Ct. 180, 76 L.Ed. 306 (1932), but does not set forth a persuasive legal argument applying the test, and blanketly notes that this court need not apply the *Blockburger* test because "the venue and charge have not changed" and that her double jeopardy rights were plainly violated when she was acquitted, and then later found guilty.

{¶ 36} Toth misconstrues double jeopardy protections. She was not charged or prosecuted after being acquitted. She was not punished twice for the same offense. Judgments are only final when the trial court reduces it to writing and the clerk enters it on the journal. Crim.R. 32(C); *State v. T.M.*, 8th Dist. Cuyahoga No. 101194, 2014-Ohio-5688, ¶ 6. When the trial court initially determined that Toth was not guilty, there was no reduction of this judgment to writing or a journalized entry. It was not final.

{¶ 37} Accordingly, Toth's second assignment of error is overruled.

### D. Substantive Due Process

{¶ 38} In her final assignment of error, Toth asks us to determine whether the trial court "abused its discretion and evidenced extreme bias in favor of the powerful government against a protected-class citizen (sexual orientation, gender

expression and gender) violating the [a]ppellant's civil rights." Toth asks us to look to R.C. 5801.05 that requires that "the common law of trusts and principles of equity continue to apply in this state." App.R. 12(A) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based." If an argument exists that can support an assignment of error, it is not this court's duty to root it out. *Citta-Pietrolungo v. Pietrolungo*, 8th Dist. Cuyahoga No. 85536, 2005-Ohio-4814, ¶ 35, citing *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028 (May 6, 1998). Notwithstanding this, our own review of the record did not reveal any discernable errors relating to substantive due process. We therefore overrule this assignment of error.

### III. Conclusion

{¶ 39} Finding no error in the trial court, we overrule all of Toth's assignments of error. The trial court fulfilled its obligations pursuant to Crim.R. 11; the record supports a finding that Toth's plea was entered voluntarily and with the proper advisements; Toth did not receive ineffective assistance of counsel; and Toth's protections against double jeopardy were not violated.

{¶ 40} Toth also asks us to promptly expunge this record. While that is not within the province of this court, we note that the record before us does not indicate that anything is preventing Toth from going through the procedural steps to seek sealing of this record.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY J. BOYLE, J., CONCUR